## G. B. ADKINS V. ARTHUR, STONE & CO.

1. On a bill of goods purchased by S. in his own name, suit was brought against him and A., who was alleged by the plaintiffs to have been a partner with S. No service was obtained on S. The defendant A. denied, under oath, that he was a partner. The plaintiffs suggested that S. was a non-resident and insolvent, and dismissed as to him; whereupon A. insisted and moved that the case be dismissed also as to himself. This motion being overruled, there was a trial, which resulted in a special verdict, on which the court below rendered an individual judgment against A. *Held*, that there was error both in overruling A.'s motion to dismiss, and in rendering an individual judgment against him.

2. One who enters into a partnership, after a debt has been incurred for goods, is not liable for such debt.

3. Where the time at which a partnership was formed was a material inquiry to fix liability upon a defendant, sued as a partner, it was error to refuse instructions to the jury to ascertain that time in their verdict.

APPEAL from Harrison. Tried below before the Hon. J. B. Williamson.

The appellees, grocery merchants in New Orleans, brought this suit against Wm. Steadham and the appellant Adkins, alleging that they were former partners in trade, doing business in Marshall under the style of Wm. Steadham & Co. The petition alleged that Steadham's residence was unknown, and no process was issued for him.

Adkins filed an answer under oath, denying that he was ever a partner with Steadham.

The suit was on an open account for groceries purchased by Steadham of the plaintiffs, and by them charged in the first place to him alone, but subsequently carried to an account against Wm. Steadham & Co.

The purchases were alleged to have been made on the fifteenth of December, 1866. They consisted of liquors and other stock for a retailing business in Marshall.

After Adkins denied the partnership under oath, the plaintiffs suggested that Steadham had become a non-resident of the State, and was insolvent, and they therefore dismissed as to him. For Adkins it was insisted that this operated a dismissal of the whole case, and it was moved that it be stricken from the docket. The court overruled this motion, and a trial ensued.

The plaintiffs proved admissions by Adkins that he was a partner with Steadham, but the admissions did not indicate when, if ever, he had become so.

Special issues were submitted by the court to the jury, on which they found among other facts, that the appellant admitted he was a partner in the retailing business; that he participated in the business and partook of its profits, but was not known to Arthur, Stone & Co., as a partner in it at the time the goods were purchased, and that the goods were sold on the credit of Steadham alone.

The verdict also found the amount due the plaintiffs, and the court rendered judgment against Adkins alone for the amount.

There were other controverted matters in the case, arising on an application for a continuance, and out of the evidence, but there is no occasion to specify them.

Adkins moved for a new trial, and in arrest of judgment, which was refused and he appealed.

*Poag & McKay*, for the appellant.—The bill of goods was bought by Steadham individually. Tibbits, in his answer, says

the bill is charged in the day book of the appellees against Stead-ham alone, although afterwards posted into the ledger book against Wm. Steadham & Co. Steadham, he says, was at the store of plaintiff about the fifteenth of December, 1866. Adkins was not seen there. The credit, we think, was beyond doubt extended to Steadham individually. Where there is no joint purchase or joint incurring of debt, but a purchase by one to whom alone credit is given; a subsequent joint interest in the property purchased, and in the business and profits depending upon it carries no liability for the original debt. (1 Parsons on Contracts, p. 155. and note N, in which it is said that "persons are not to be held jointly liable upon a contract as partners, unless they have a joint interest in the purchase existing at the time of the formation of the contract.") In the case of Young v. Hunter, 4 Taunton, p. 582, "Hunter and Rainey bought goods of the plaintiff, which were intended to be shipped. Hoffman & Co. were allowed to join in the adventure, and to have a fifth share, upon the goods being put on board. The plaintiff knew nothing of Hoffman & Co. in the sale of the goods to Hunter & Rainey."

The question was whether Hoffman & Co. were liable. Mans-field, C. J., directed a verdict for defendants. On a new trial Mansfield, C. J., continued of the same opinion. Heath, J., said the proposition to hold the defendants liable, was wholly un-founded. Chambre, J., was of the same opinion. Gibbs, J., said it was not to be inferred from the fact that Hoffman & Co. were interested at the time of the shipment, that they were interested at the time of the purchase.

Where several persons join in an adventure, each to contribute his share, each is liable alone, for his share, to the person from whom he bought it; no partnership arises until the several shares are brought together and mixed upon one common adventure. (1 Parsons on Contracts, p. 156; see also note O, where it is

said " this principle is fully established in Saville v. Robertson, 4 Term, Rep., 720.")

The facts in this case of Saville v. Robertson, are pretty fully stated at pages 487, 488, 489, of Colyer on Partnership. The facts are shortly these : Several persons, not partners, formed an adventure to the East Indies, (the ship and outfit was a copartnership affair,) the cargo to be made up by the several adventurers furnishing each a part, which were mixed up on board. Upon the question whether the defendants were liable for the goods so purchased by the various adventurers to make up the cargo, it was held that they were not, and this too, notwithstanding they had accepted bills of exchange drawn on them for the very goods shipped.  (Ib. 400.)

Lord Kenyon says : " My difficulty arises from the form of this action, which is for goods sold and delivered. I do not see how any act which passed subsequently to the delivery of the goods, can have any retrospect, so as to alter the nature of the contract which was not doubtful." (Colyer on Partnership, 490.) And again, " I cannot distinguish this case from one put at the bar, where several persons are to contribute their quota of money, and they apply to different scriveners to procure it; they could not all be liable for the capital each should borrow." (See § 516, p. 491, Colyer on Partnership.)

And again, in the same case, " suppose several persons agree to open a banker's shop, and it was agreed that each partner should bring into the house a certain sum of money as his share, it could not be contended that if one of them should borrow money for his share, all the others would be liable for it." ( Vide Colyer on Partnership, § 516, p. 494 ; see also § 517, same authority.)

Upon this point Chancellor Kent remarks : " To render persons jointly liable upon contracts as partners, they must have a joint interest cotemporary with the formation of the contract." (3 Kent, 5 ed., p. 36.)

That the appellant participated in the profits of the concern, establishes the fact only that he was at one time a partner, but does not show that he was a partner when the goods were purchased.

That the bill of goods were bought on the individual credit of Steadham is shown by the fact testified to by the witness Tibbets, that the goods were charged to Wm. Steadham in the original book of entry, and by James Turner, one of the counsel of appellees, who stated that he changed the bill of particulars used in the suit from Wm. Steadham as charged in the bill to Wm. Steadham & Co.

That the account was posted into the ledger as Tibbets says to Wm. Steadham & Co., avails nothing to the appellees, but shows rather that it was a second thought to charge the appellant and endeavor to make him liable for the debt of Steadham.

But it was insisted in the court below upon the authority of Divine v. Martin, 15 Texas, p. 31; Reynolds v. Cleveland, 4 Cow. 282, and other cases, that in a general partnership all the partners are liable for all articles purchased for the benefit of the firm, though the vendor does not know of its existence and supposes himself dealing with and giving credit to the individual partner, by charging him alone with the goods. We are not proposing to controvert the proposition here alluded to, but we say the proposition is based upon the fact that a partnership really exists at the time the goods are sold and delivered. In this case we submit the partnership had not been consummated at the time of the purchase of the goods, and not until Steadham had put them into the business as his share of the capital stock.

If goods are purchased, says Chancellor Kent, (3 K., 5 ed., p. 36,) in pursuance of a previous agreement between two or more persons that one of them should purchase the goods on joint account in a foreign adventure, they are all answerable to the seller for the price as partners, even though their names should not be known to

the seller ; for the previous agreement made the partnership precede the purchase, and a joint interest attached in the goods at the instant of the purchase.

Such surely was not the character of the agreement between the appellant and Steadham. The evidence shows a very different case.

That the appellant admitted that he was a partner of Steadham to Tibbetts is not conclusive against him. See 1 Parsons on Contracts, p. 146, where it is said " an admission by a person that he is a partner in a firm is not conclusive against him, though made to the creditor, if made after the debt for which it is sought to make him liable, was contracted."

By the application of these principles to the present case, we respectfully submit, that the court below ought to have given the charges asked by the appellant ;. and that it was error to render judgment against him upon the finding of the jury, the partnership not being established as existing at the time the goods were bought. That a partnership once established, is presumed to continue in the future is true, but it by no means justifies any inference of previous existence.

*James Turner*, with whom were *Moore & Shelley*, for the appellees.—There is no difference in the law fixing the rights and liabilities of dormant partners and that applicable to known members of the firm. All are liable for the debts, and when discovered all may be sued. If the position taken by the learned counsel for the appellant be correct, a dormant or secret partner could never be made liable for a debt of the partnership. From the very fact that he is a secret partner, credit could not have been given him, and if given to the firm at all, it must have been given to those who were known, and to them alone. And yet the gentlemen insist that only those to whom credit is given can be made liable ; that only those known to the creditor at the time the credit was

given can be made liable for a debt, in the fruits of which all had an interest. The law books are full of adjudicated cases to the contrary, while in reason, justice and law, it is but simple right, that all who are interested in creating a debt, should be bound for its payment. Dormant and secret partners may be sued when discovered, even though they are unknown at the time of contract and discovered after the debt was contracted, (see Smith on Contracts, top pages 318 and 319; 1 Parsons on Contracts, p. 142; Colyer, § 384; 1 Iredell's R., p. 29; 15 Tex. R., p. 31,) and are liable even though the creditor was ignorant of their connection with the partnership, and believed he was dealing with the person who contracted the debt in his individual capacity (see Story on Partnership, § 139; Colyer, § 20, 536, 537); and even though the partners, as between themselves, had expressly stipulated that the secret partner should not be liable; and even though the vendor believed at the time that he was dealing with the individual purchaser, and giving him alone credit. (See Story on Partnership, § 139; Colyer, § 20, 536, 537, 392; 1 Johns. R., 422; 7 Iredell, p. 4; 15 Peters R., 561 and 562.)

The finding of the jury, and the testimony upon which it rests, both establish the existence of the partnership relation at the time of the purchase, and that the goods were for the use of the partnership; the partnership proven to exist, the presumption of law that it continues until a dissolution is proven. (See 1 Greenleaf, § 42; 15 Tex., 31.)

It was insisted in the court below that this was not a partnership debt, and they attempted to show that there was an agreement to enter into a partnership, each to furnish so much, and this bill was the amount of stock furnished by Steadham to the partnership, and that, therefore, it is an individual and not a partnership debt. The only grounds upon which they base it is a statement in the first part of Dawson's testimony, that the witness fully explains in the latter.

If Steadham went to New Orleans to buy a stock of goods in which a partnership was to exist as soon as purchased, in contemplation of law they are partners in the purchase. (See Story on Partnership, § 147.)

But we have already seen that a partnership did exist before the purchase. Adkins admitted the partnership to exist while Steadham was gone to New Orleans; and Dawson swears that the establishment was opened on the thirteenth day of November, 1866, and the purchase made in the December following, more than a month after Dawson swears the partnership commenced; besides the jury find that Adkins was a partner. There is nothing in the facts that will warrant the assumption that this was an individual debt, and no fact that will class this among the cases where it is decided that A, B and C agree to each purchase goods, and when purchased, with them to form a joint adventure—say load a ship for some foreign port—and A buys on credit. The debt is the debt of A and not of the partnership. Now the distinction is this: a partnership did not exist until the goods were loaded upon the vessel, and until the separate interest of each was attached and blended; while in this case the partnership and joint interest attached the moment the purchase was made, even granting that the facts are as contended for by the defendant. But we have shown from the facts that the partnership existed before and at the time of the purchase, and so in effect the jury have found.

It matters not to whom the credit was given, if there existed a partnership, and the goods were purchased for the partnership. All are bound—dormant, secret or open. (See Story on Partnership, § 139; Colyer, § 20, 536, 537 and 312; 15 Johns., 422; 7 Iredell, 4; 15 Peters, 561, 562.) Mr. Story states the rule to be that, where two persons separately agree to purchase goods, and afterwards agree to unite their interest in a joint adventure, they are not liable as partners for the price of goods. But he adds

that it would be otherwise if the adventure were agreed upon before the purchase, and the purchase was made in the name of one for the benefit of all (see Story on Partnership, § 147); and that is as broad as any rule has been stated by any author, and is broader than the leading decisions upon which the rule is founded. In Southwaite v. Duckworth, in which the case of Saville v. Robertson was reviewed, commented on and explained, it was decided that where a purchase was made in pursuance of an agreement that all should share in the venture, all were liable, though the purchase was made in the name of one, even though that one had no authority to bind the rest. And that the case differed from Saville v. Robertson in this, that here the partnership interest attaches at the purchase, while there, there was no partnership until the goods were bought and delivered on board the vessel. (See 12 East, 425; Story on Partnership, §§ 145, 146, 147 and 148.)

It is further objected to the judgment that the suit was discontinued as to Steadham, and that the court should have dismissed the cause on motion of the defendant. If only the partnership, and not the individual were bound for the payment of a partnership debt, there might be some reason in the exception; but even then there is nothing in our system of pleading to prevent suit being dismissed as to one not served, and more especially when it is shown that such partner is a non-resident of the State, and insolvent even on a joint note containing no cause of severalty. A judgment may be taken against one joint maker when either insolvency or non-residence of the others are shown. The question has so often been decided and the practice so well settled, that no references are necessary. I will call your honor's attention to the case of Tulane v. McKee, 10 Tex., 335.

WALKER, J.—This was an action commenced against Steadham & Co., as partners in trade, to recover the balance of a bill of groceries sold by the plaintiffs, as was alleged, to the defendants.

The judgment is for the plaintiffs against G. B. Adkins alone, the plaintiffs having dismissed their suit against Steadham.

There was error in the court refusing to dismiss the action on motion of the defendant for the reason stated in the exception, and it was error to allow an individual judgment against one of the partners in an action against the partnership in the firm name.

It was error to exclude the evidence offered by the defendant, Adkins, tending to show, that at the time the goods sued for were furnished, he was not a partner of Steadham.

One who comes into a partnership after a debt has been contracted in the purchase of goods, is not liable for the purchase money.

There is error in the refusal of the court to charge the jury that they must find from the evidence at what time the partnership commenced. (See Parsons on Contracts, vol. 1, p. 156; Saville v. Robertson, 4 Term, 720.)

The judgment of the court below is reversed and the cause remanded, to be proceeded in in accordance with this opinion.

                                        Reversed and remanded.